GROVES *v.* SMITH, STATE DEPARTMENT OF PUBLIC WELFARE ETC.

[No. 18,881.   Filed December 5, 1956.]

*Frank M. Fish,* of Evansville, for appellant.

*John S. Brady* of Evansville, for appellee Charles J. Smith, and *Frederick W. Harrison,* Deputy Attorney General, for appellee, State Department of Public Welfare.

ROYSE, J.—Appellee* Charles J. Smith brought this action in the Juvenile Division of the Vanderburgh Probate Court, to have Inez Jane Smith, a child born out of wedlock, declared a dependent child and that she be made a ward of said court. His petition averred he was the father of said child and that appellant was the mother. It further averred that said child came within the provisions of §5, Ch. 356, Acts of the General Assembly, Session of 1945 (§9-3205, Burns' 1956 Repl.) (On the day the petition was filed, despite the fact that there were no averments in the petition warranting immediate custody of the child, without hearing of evidence and without notice to appellant the trial court entered an order approved by a Mrs. Denny of the Welfare Department making said child a temporary ward of that Department.)

---

* Hereinafter the term appellee shall refer only to said Smith.

Trial to the court, which found said child was a dependent child under the foregoing provision of the Act, and she was made a ward of the Court. The error assigned here is that the Court erred in overruling appellant's motion for a new trial. The specifications of that motion are that the decision of the court is not sustained by the evidence and is contrary to law. This requires a consideration of the condensed recital of the evidence set out in appellant's brief.

"My name is Charles J. Smith. Inez Jane Smith is my daughter. At the present time I have custody of this girl. I live at 4900 Stringtown Road, that is the fourth house beyond Stringtown School, on the left hand side. I am married at this present time. I am living with my wife. She is very anxious to be a petitioner in an adoption proceeding for the child.

"Petitioner's Exhibit No. 1:

June 19, 1954

"TO WHOM IT MAY CONCERN:

Charles J. Smith, (Inez's father), is to have full and complete custody of Inez from this date on.

Hazel Groves

Frances Haight
Witness

Mrs. H. C. Jones
Witness"

"Since she gave me this written consent she has not told me she wants the child back. I heard Hazel Groves' attorney make the statement she wants the child back, but I never heard her say so. I prepared this statement myself. I typed it myself with her consent. I took it over to her and she signed it. Since that time she has asked to see the child and she has seen it. I have not denied her seeing the child.

"I have been married two years last February. That child has been in my custody since the date of that paper in June. The child will be six years old on the 15th day of next month. She is going to St.

Paul's School. The child belongs to me too; the mother of the child and I were not married when the child was born.

"The mother of the child and I have never been married. She has never asked me to marry her. . . . My wife is not here in the court room. She knew this hearing was coming up this afternoon.

"My wife works in the Welfare Department. I have a petition for adoption now. I tried to talk with the mother, I believe it was Thursday evening, she was very hostile, and did not care to discuss it. She stated that she knew about the law.

"The purpose of this petition to have the child declared a ward of the court is so I can adopt the child. . . .

"I am not depending upon this statement introduced into evidence altogether, I think looking after the child's welfare the child will be much better off with me. Because of various reasons. Under the circumstances of this case I don't think the mother should have the custody rather than the father. If the court would like me to start, I am referring to instances leading up to what I think.

"I am not in a position to decide whether the home she maintains on Walnut Street is a good home or not. I know some homes are better than other homes. I don't know that she is home all of the time."

---

"My name is Hazel Groves and I live at 716 East Walnut Street. I maintain a household at that address. I have half of a double tenement. It is a duplex. I get my income from a roomer and boarder and I take in washings and ironings. I have sufficient income to support myself and this child. I have done that in the past.

"I had this child from the time it was born until it was five; Charles J. Smith, the father, lived with me for two years and then I left him and I have been supporting the child. He and I were never married. . . .

"I had possession of this child up until about the time this paper was signed. The circumstances sur-

rounding my signing that paper was, I asked the child's father to keep her until I came back off a vacation, and he asked me could he send her to school, and I said, yes, I would help out on the clothes and books, and he told me that was not necessary, and then I have only seen the child twice since I came back and I called him up on Saturday so I could take her to the park on Sunday and he refused to let me have her. It was early in June when I came back from my vacation. He has had the child ever since. He has refused to let me have my child or see her. Yes, I thought I had relinquished any control over the child because I did not know what was right. I did not consult an attorney about my rights until this thing came up.

"I sure do want the custody of this child back. I am asking this court to give me this child back right now. I signed the paper, but I don't want it to have any effect now.

"I have a good home now. No one representing Mr. Smith or the Department of Public Welfare ever made an investigation of my home. I am willing for my home to be investigated. I will send the child to school. It will go to Stanley Hall. I live in the Stanley Hall district. I do not want this child to be adopted by Mr. Smith or anyone else. After he left me with the child he paid me two dollars and a half per week support, up until June when I signed the paper and he took the child. After he once took the child I didn't think he could adopt the child."

Appellee in his reply brief has not corrected or contradicted the foregoing statement of the evidence.

The provision of the statute under which this action was brought provides as follows:

"The words 'dependent child' as used herein, or in any other statute concerning the care, custody or control of children, shall mean any boy under the age of eighteen [18] years, or any girl under the age of eighteen [18] years, who is dependent upon the public for support, or who is destitute, homeless or abandoned." §9-3205, *supra*.

Appellant contends the foregoing evidence wholly fails to establish that this child was a dependent child under the statute; that under the law she is the natural guardian of the child and entitled to its custody; that she had a right to revoke the custody agreement and did so when she learned of appellee's action; that appellee is by this action attempting to use the Juvenile Court and the statute permitting such courts to circumvent the civil adoption statutes which require appellant's consent to the adoption of her child.

Appellee contends that by signing the custody agreement appellant abandoned the child; that he, by this action, indicated his intention to abandon the child. He further contends the court ordered an investigation of appellant to be made by its representative and the report of such investigation was in the hands of the court and counsel at the time.

The parties are agreed that under normal circumstances the right to the custody of said child was in the appellant.

Appellee relies strongly on the cases of *Rhodes et al.* v. *Shirley et al.* (1955), 234 Ind. 587, 129 N. E. 2d 60, and *Emmons* v. *Dinelli et al.* (1956), 235 Ind. 249, 133 N. E. 2d 56. Both of these cases involved the adoption statute. This is not such an action.

In the Emmons case, *supra,* our Supreme Court, after an exhaustive review of the decisions of this and other states on the question of abandonment, said at p. 63 (133 N. E. 2d) :

"We conclude that the reported cases are not decisive of the issue before us, and are helpful only in so far as they hold that in determining the ultimate fact as to whether a child has been 'abandoned or deserted,' the law should receive a liberal construction to the end that unfortunate children who have been bereft of home and parental care may be afforded the benefits of an adoptive home and parental care."

The court then, in referring to the facts of that case, said at p. 64:

> "In the case before us, we are confronted with evidence which supports the fact appellant evinced a 'settled purpose to forego her parental duties' to the child. However, on the other hand, the evidence is uncontradicted that she evinced no such 'settled purpose' as to her *claims* to the child.
>
> "We are confronted on the one hand by the fact that, for a period of nearly four years prior to the filing of these proceedings (adoption), the child was 'bereft of a home and parental care.' During this period appellant imposed the burden of providing a home and care for her infant daughter upon the child's paternal aunt, although she could have kept the child with her in the home of her parents 'but didn't'. During all this time she was loathe to assume her parental *duty* to care for the child, even temporarily. She did, however, maintain an interest in the child during this period by visiting her at irregular intervals and giving her occasional presents and monetary 'gifts' totalling 'about $200.00.' "

We do not believe those cases are applicable to the question now before us.

Conceding without deciding that the custody agreement signed by appellant was an irrevocable relinquishment of her natural and legal right to the custody of her child, the evidence in the record herein is not only not sufficient to sustain the decision and judgment of the trial court, but leads inescapably to the conclusion this child was not a dependent child under the statute. It is uncontradicted that at all times after the so-called agreement was signed this child was in the home of appellee. There is no merit to his contention that by bringing this action he indicated his intention to abandon the child. His own evidence shows clearly that he was attempting to use this action to circumvent the provisions of our adoption statute. This he may not do.

In his brief appellee sets out what he states was a report of the Probation officer of the trial court as to an investigation made of appellant's home. This report is not in the record and should not have been inserted in appellee's brief. Furthermore, if such report had been placed in the record it would not have been legal evidence. *Ford* v. *State* (1951), 122 Ind. App. 315, 317, 104 N. E. 2d 406, and authorities there cited.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 138 N. E. 2d 295.