RHODES ET AL. *v.* SHIRLEY ET AL.

[No. 29,340. Filed October 3, 1955. Rehearing denied November 29, 1955.]

*Russell E. Wise,* of Union City, and *John A. Resler,* of Portland, for appellants.

*William A. Gutheil* and *Zane E. Stohler,* both of Winchester, for appellees.

ACHOR, J.—The appellees filed their petition for adoption in proper form accompanied by a formal consent for adoption signed by the parents of the child, as provided by §3-120, Burns' 1946 Replacement. To

this petition the appellants, the natural parents, were permitted by trial court to file an intervening petition in opposition thereto.

Three questions are presented by this appeal. The first pertains to an alleged understanding between the appellants and the Department of Public Welfare as to the conditions under which the consent for adoption was executed.

The allegation of the intervening petition upon this issue is as follows: "It was understood and agreed by and between the Randolph County Department of Public Welfare and these intervening petitioners that if any time within one year they were able to re-establish themselves economically so that they were in a position to give their children a proper home and proper support and maintenance, that said children including Rita May Rhodes would be returned to these petitioners."

The above allegation is in the nature of an affirmative defense upon which the appellants carried the burden of proof. It presented a question of fact for determination by the trial court. The evidence in support of the above allegation was in sharp dispute. The trial court had before it all the evidence upon this issue, the report and recommendations of the Department of Public Welfare, evidence regarding the present status of both the appellants and appellees and all other facts and circumstances upon which he was required to determine what was for the best interest of the child. He had an opportunity to see and hear the witnesses and weigh the evidence upon these issues. He decided them against the appellants and granted the petition for adoption. We as an appellate tribunal are not at liberty to disturb that judgment on the basis of the factual circumstances under which the consent was signed, or upon which the court determined the issue as to the best interests of the child.

The two remaining questions before this court are such that they challenge the jurisdiction of the trial court to entertain the petition for adoption. They are: (2) Was the form of the consent legally sufficient and (3) did the natural parents have an absolute right to revoke their consent at any time prior to the decree of adoption?

It is contended that because the consent was executed in blank—that is, naming the child but not the adoptive parents, the consent was insufficient and therefore a nullity. However, the position asserted by appellant is not supported by any express statutory provision or a decision of a court of appeals in this state. Neither is such rule consistent with adoption procedure as now practiced in this state. Under our procedure, if children are made wards of the Department of Public Welfare and if the consent of the parents nevertheless is required before the children can be adopted, the execution of a blanket consent is consistent with the fact that the department is thereafter expected to select the most suitable adoptive homes for such children, place them in such homes and supervise their relationships for a probationary period prior to the comencement of formal proceedings for adoption. Under this procedure the names of the adoptive parents are not known, when the consent is executed, yet it seems reasonable that all the parties should be permitted to act with assurance that the adoption can be consummated without again going to the parents for their further consent. Furthermore, the responsibility of placing children in the most suitable adoptive homes of necessity must rest upon the Department of Public Welfare and the court which finally hears and adjudicates the matter. Parents who sign blanket consents for adoption and place such consents and their children in the custody of the department must be considered as

also having vested the department and the court with the authority to select and approve the adoptive homes of their children. We conclude therefore it is not necessary that a consent for adoption so executed should specifically name the adoptive parents.

The remaining question presented is whether or not the parents, appellants herein, had an absolute right to revoke their consent prior to the final decree of adoption, —which right when exercised deprived the trial court of further jurisdiction in the proceeding.

There is perhaps no subject upon which the courts of this country have been in greater confusion. This confusion has stemmed in part from the lack of uniformity in the adoption statutes of the several states. The situation has not materially changed since the Appellate Court in the case of *Leonard* v. *Honisfager* (1909), 43 Ind. App. 607, 609, 88 N. E. 91, stated:

> "The subject of the adoption of children is governed exclusively by statute, and the statutory provisions of the different states on the subject are so widely variant that the decisions of courts of other states construing their statutes on the subject can afford little or no light on the proper construction to be given to ours. . . ."

Nevertheless, since our courts have not ruled upon this particular issue it seems advisable that we consider the laws of other states as expressing their best judgment upon the issue. Notable among these states which have permitted the withdrawal of consents as a matter of right are California, Illinois, Ohio and New York. *In re McDonnell's Adoption* (1947), 77 Cal. App. 2d 805, 176 P. 2d 778; *Petition of Thompson et al.* (1949), 337 Ill. App. 354, 86 N. E. 2d 155; *Kozak* v. *Lutheran Children's Aid Society* (1955), — Ohio App. —, 124 N. E. 2d 168; *People ex rel. Kropp* v. *Shepsky* (1953), 305 N. Y. 465, 113 N. E. 2d 801. However, it is to be noted that statutes subsequent to the above

cases have been enacted in both Illinois and California which have modified the rule in those states. The Illinois statute makes consent "irrevocable unless it shall have been obtained by fraud or duress and a court of competent jurisdiction shall so find." Laws 1945, p. 10, §3-7, added 1953 Laws, p. 1480, §1 (Smith-Hurd Illinois Ann., 1954 Cumulative Ann. Pkt. pt., p. 8, §3-7). And the California statute now provides that "Once given, consent . . . may not be withdrawn except with court approval. . . ." Civil Code of California, Div. 1, pt. 3, tit. 2, ch. 2, §226a.

As to the State of Ohio, adoption proceedings in that state differ materially from those of this state. The Ohio statutes provide for a preliminary hearing and an interlocutory order, followed by a mandatory six-month probationary period which must precede the final hearing and decree of adoption. It is to be observed that nowithstanding the language of the *Kozak* case, *supra,* an Ohio statute expressly provides that "Such consents may not be withdrawn after the entry of an interlocutory order, . . ." Ohio Revised Code Ann., §3107.06, p. 73. Also, in the State of New York it is to be noted that although the courts of that state have consistently asserted the rule that a consent may be revoked before final decree of adoption as a matter of right, nevertheless in recent cases the courts of that state have seen fit to support their decisions by reciting facts which would justify the same result in other states which follow the prevailing rule. See: *In re Cohens Adoption* (1935), 155 Misc. 202, 279 N. Y. S. 427; *In re Anonymous* (1942), 178 Misc. 142, 33 N. Y. S. 2d 793.

We believe that the following quotation from 156 A. L. R., p. 1011, fairly states the better and prevailing trend of the cases on the subject.

". . . Where a natural parent has freely and knowingly given the requisite consent to the adop-

tion of his or her child, and the proposed adoptive parents have acted upon such consent by bringing adoption proceedings, the consent is ordinarily binding upon the natural parent and cannot be arbitrarily withdrawn so as to bar the court from decreeing the adoption, particularly where, in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection, in the nature of a 'vested right,' have been forged between them and the child."

For a more extensive discussion, see 156 A. L. R., pp. 1001-1022. See also, 138 A. L. R., p. 1038, and 24 A. L. R. 2d 1140.

It is argued that the right of revocation prior to final decree, although not expressed, is implied by our statutes. Section 3-117, Burns' 1946 Replacement, provides for a supervisory period subject to the discretion of the court. It is contended that the provision is intended to serve a dual purpose, (1) to ascertain that the child and adoptive parents adjust to the proposed relationship and also (2) that the natural parents adjust themselves to the consequences of surrendering to strangers one of their own flesh and blood. However, an analysis of our Indiana statutes indicates no such legislative intent or purpose for the supervisory period. The purpose of said period of supervision is indicated by the nature of the report of the supervisory agency as required by the next section of the statute (§3-118). This section provides: ". . . such agency shall submit to such court a written report of its investigation and its recommendation as to the advisability of such adoption . . . Such report shall . . . include . . . *the former environment and antecedents of such child, the fitness of such child for adoption and of the suitability of the proposed home for such child. . . .*" (Our italics.)

There is no inference of a right of reconsideration or revocation by the natural parents. In fact there is no reference to the present status of the natural parents. Rather, it would appear that the statutory purpose of the trial period is to permit the supervisory agency to determine whether the adoptive parents have displayed the proper love, affection and parental influence over the child, and whether the child has properly adjusted himself to his new surroundings and parents. When a child comes before the court for adoption, whether on the basis of the desertion or consent of the natural parents filed with the court, the present disposition, the status and the fact of the blood relationship of the natural parents are material factors for consideration by the court. They are material in determining what is for *the present best interests of the child.* They are not considerations which void all others. The dominant and ultimate consideration is the best interests of the child.

Also, it is asserted that, because of the fact that the adopting parents have an opportunity to decide against the adoption of a child at any time before the final decree, the natural parents should also have a right to reconsider their action and revoke their consent at any time prior to such decree. However, under our procedure (in the absence of fraud or duress), this right of natural parents to consider whether or not they want their child adopted is within their full power and control *prior* to the execution of the consent for adoption. Naturally such a decision is one fraught with many anxieties. However, parents may have as much or as little time to make this decision as they deem necessary, whereas the adopting parents have no opportunity to make this decision as to the particular child until he is first placed in their home on an adoptive basis and they have had an opportunity

thereafter to live in a parental relationship with the child. Our procedure gives both the natural parents and the adoptive parents the opportunity of making their decision on the basis of their experience with the child. Even in the State of New York, whose courts have consistently asserted the arbitrary right of natural parents to revoke their consent, the Supreme Court of that state on one occasion, when directly confronted with this issue, stated:

". . . (Although) no order of adoption shall be made until the child has resided with the foster parents for at least six months, (this) does not make the natural parent's surrender of the child conditional or subject to revocation within six months; and . . . while such a surrender doubtless may be revoked for facts and upon grounds which would lead a court to revoke any kind of a contract . . . it is not revokable at the will or upon the mere whim or caprice of the parent or merely because the parent has experienced a change of mind or heart." *People* v. *Commissioner of Welfare* (1947), 188 Misc. 919, 70 N. Y. S. 2d 389, 393.

We do not construe our statutes as implying an intention that natural parents, having consented to the adoption of their children, have a right to arbitrarily revoke that consent at any time prior to the final decree of adoption. Neither does reason dictate such a rule. On the contrary, if such a rule were followed there would be no purpose in obtaining a consent prior to the placement of children and the subsequent supervisory period, all of which, under our procedure, ordinarily precedes the actual adoption proceedings.

In order to mature as normal, well-balanced adults, children need to know and be a part of the security, the give and take and the love of a family. They need to belong. They cannot have this experience in orphanages or in temporary boarding homes.

At present there are far more qualified prospective parents than there are children available for adoption. Prospective parents are willing to take children into their homes on a conditional supervisory basis if, as now, the ultimate adoption of such children is dependent only upon a judicial determination as to *the child's best interests*. However, there seems little doubt that if natural parents were given the right to arbitrarily revoke a consent for adoption once voluntarily and deliberately given, this would greatly discourage qualified prospective parents from seeking children through adoption. Few really considerate prospective parents would take a child into their hearts and homes and expose either the child or themselves to the heartache of a child's removal from their homes, after mutual ties of affection had been established, if such removal were possible for no other reason than that the natural parents had changed their minds. A ruling which would make this possible would place a penalty rather than a reward upon adoptive parents. It would subject every adoptive parent and child to the possibility of a most cruel and emotional turmoil, and because of this fact it would make adoptive parents the ready prey of possible unscrupulous parents.

We are well aware that for any normal parent a decision to surrender one's own child for adoption is the result of or is accompanied by an equally severe emotional turmoil. However, as heretofore stated, natural parents are given as much or as little time as they need to make their decision. Having signed their consent for adoption, it would be unreasonable to hold that they could arbitrarily withdraw their consent "where (as in this case), in reliance upon such consent, the proposed adoptive parents have taken the child into their custody and care for a substantial period of time, and bonds of affection, in the nature of a 'vested

right,' have been forged between them and the child."
156 A. L. R., p. 1011, *supra.*

Judgment affirmed.

Arterburn, Bobbitt and Landis, JJ., concur.

Emmert, C. J., concurs in result.

NOTE.—Reported in 129 N. E. 2d 60.