130 So.2d 310 (1961)
Joan McKINNEY, by her next friend, Ruby McKinney, Appellant,
v.
James Alfred WEEKS and Dorothy Miller Weeks, his wife, Appellees.
No. 1954.
District Court of Appeal of Florida. Second District.
April 26, 1961.
Rehearing Denied June 5, 1961.
Robert T. Westman of Sutton & Brown, Orlando, for appellant.
William C. Irvin, Cocoa Beach, for appellees.
*311 WARREN, LAMAR, Associate Judge.
Petitioner filed her petition for writ of habeas corpus to regain the custody of her infant son, who was born out of wedlock March 13, 1960. The respondents, husband and wife, whose identity was not disclosed to petitioner until the filing of the petition, gained custody of the infant some three weeks prior to the commencement of the habeas corpus proceedings.
The petition alleged that respondents obtained custody of said child without the valid consent of petitioner and prayed that a writ of habeas corpus be directed to respondents to bring the child before the court and show cause why they withheld the care, custody and control of said child from petitioner. The writ issued, and the reply thereto averred that petitioner executed a valid consent to adoption and, that under the terms of the said consent for adoption, petitioner consented to the adoption of her minor son by respondents and consented to respondents having full custody and control of the minor; it further averred that respondents had filed a petition for adoption. Thereafter, a hearing on the merits was had and the court in its order found that respondents were entitled to custody, and the writ of habeas corpus was discharged. This appeal followed.
The evidence at the hearing was directed to the question of whether or not petitioner had validly consented to the adoption of her infant son. It was established that the mother had signed a "consent for adoption" in blank, the space for the names of the prospective adoptive parents having been left blank, and that at the time she did not know their identity. At the conclusion of the evidence and the argument of counsel, the court stated it was satisfied that the consent was freely, voluntarily and knowingly given, and that the only problem concerning the court was whether or not the consent was legal, it being an "open" consent. It, however, discharged the writ, remarking that the only Florida case on the subject was In re Adoption of Gort, 1953, 6 Fla. Supp. 68 (Dade County).
The petitioner (appellant) attacks the validity of the consent for adoption on the ground that a consent signed in blank in which the name and identity of the prospective adopting parents are not disclosed to the consenting parent is voidable if not void.
Our statute, F.S. § 72.14, F.S.A., dealing with consent, so much of it as appears applicable here, is as follows:
"The notice [in the absence of consent] provided for in § 72.13 shall be unnecessary when there shall have been filed with the petition, or thereafter, a written consent, executed in the presence of two witnesses and acknowledged before a notary public, or other officer authorized by law to take acknowledgments, by: (1) The living parent or parents of a child born in wedlock, or the living mother of a child born out of wedlock * * *."
First brought to our attention by petitioner is the decision of In re Adoption of Gort, supra, wherein it was noted that the names of the adoptive parents were not set forth in the consent and that the consent stated that the natural mother did not know their identity. There was also testimony that the mother was still under the influence of drugs and anesthesia and still suffering from the effects of childbirth when she signed the consent. The court was of the opinion that the consent should be rescinded, first, because the court could not say it was freely and knowingly given and, second, it was general rather than specifically to the petitioners in the case. On the latter point, it was said:
"The Supreme Court of Florida has not specifically passed upon the effect of a general consent to adoption, but it has been held in other jurisdictions that a consent given by a parent from whom the identity of the adopting parents is concealed is insufficient, either *312 on the ground that such a consent is against public policy, or on the ground that the consent must be given in or with reference to specific proceedings, 24 A.L.R.2d 1127, 1138. This court is in accord with such holdings. Otherwise, general consents to adoptions would provide too tempting a device for unscrupulous persons to organize and operate a black market trafficking in babies. In the opinion of the court a consent to adoption must be given to specific persons, or the adoption must be handled through a licensed child placing agency so as to circumvent any such bartering  the use of any other method is against public policy."
Petitioner next points to three cases from other jurisdictions, i.e., Herman v. McIver, 1957, 248 Iowa 619, 80 N.W.2d 500, Ward v. Howard, 1940, 217 N.C. 201, 7 S.E.2d 625, and Adoption of Ashton, 1953, 374 Pa. 185, 97 A.2d 368. While these cases are of doubtful assistance to petitioner, reference is briefly made to them. In Herman v. McIver, the names of the proposed adopting parents were not included in the consent when it was signed. One of the objections to the proposed adoption, and the only one considered on appeal, was that the consent to adoption was contrary to the laws and statutes of the State of Iowa. The statute referred to provided that the consent should refer to and be applicable only to the specific adoption proposed by the petition. In reversing the trial court and directing the dismissal of the petition for adoption, it was held that there must be compliance with the statutory requirements. (See also, for construction of a similar statute, Las Vegas Sun v. Franklin, 1958, 74 Nev. 282, 329 P.2d 867.)
The pertinent facts in Ward v. Howard, wherein the reviewing court had before it the determination of rights to assets and funds of two estates, were that a child was found by a juvenile court to be neglected under the law, made it a ward of the court, and committed it to a children's home society to remain in custody until further order of the court, the condition of such custody being that the society was given legal guardianship with power to place the child in a home for adoption. Consent to an adoption was given by the society and letters of adoption followed; it was argued that the mother had no notice of the proceeding and did not consent thereto. The appellate court, in reversing a judgment sustaining the validity of the adoption, held that the juvenile court had no power to place the child anywhere for adoption, and that that part of the order of the court did not in any way affect the right of the mother as to the adoption proceeding, or the necessity of her consent in that proceeding. Continuing, the court stated it did not need to consider as to what time, relative to the adoption proceeding, consent of the living mother might be obtained, whether before or after the institution of such proceeding; further, that the consent must at least be in fair contemplation of the proposed adoption, and this included its most essential feature, the identity of the adoptive parents. While the statutory provisions relative to consent were not set forth in the opinion, the court observed that "[d]oubtless the law originally contemplated that consent be made in the proceeding itself, * * *." [217 N.C. 201, 7 S.E.2d 627]
In adoption of Ashton a petition was filed in the orphans' court for a decree of adoption of an infant child. The child's natural mother at the hearing on the petition protested the adoption. During the progress of the hearing, she filed a petition for a writ of habeas corpus in the court of common pleas to obtain custody of the child. After an answer was filed to the petition for habeas corpus, this proceeding was transferred to the orphans' court. The places for the names of the proposed adopting parents in the written consents, attached to the petition for adoption, were blank when the consents were signed by the mother, and such persons were unknown to her. The legal inefficacy of the *313 consents having been pronounced by the orphans' court, it nevertheless found that the mother had abandoned the child, and decreed the child to be the lawful child and heir of the adopting parents. The primary question for review was stated in the opinion to be whether the evidence justified a finding of abandonment, however, in the decision statements appear, without discussion and without citation of authority, that the consents were invalid.
The respondents, on the other hand, contend that the consent for adoption in question is valid, even though it was a blanket or general consent, and they refer to Petition of Gaban, 1947, 158 Fla. 597, 30 So.2d 176, 179, wherein the defense asserted, among others, that the natural parents had not given their consent that the child be adopted. The appeal was from a final decree denying the petition of the natural parents to vacate and set aside the interlocutory decree awarding temporary custody, and granting the petition for adoption. The exact form of the consent therein was not set out but the court, in alluding to a portion of the evidence, stated that "the name or names of the adoptive parents were withheld from her [the mother]." Prefacing its initial holding, the court stated that "[o]ne of the essential questions here for adjudication is whether or not from a consideration of all the evidence adduced by the parties it is legally sufficient to establish written consent and approval of the natural parents to the adoption by the Gabans of the unnamed girl child so as to establish a substantial compliance with the aforesaid act." Although upon first consideration the decree was reversed, upon rehearing it was affirmed, upholding the award of custody to the adopting parents. (On the matter of "substantial compliance," see In re Whetstone, 1939, 137 Fla. 712, 188 So. 576; In re Stonehouse's Adoption, 1944, 155 Fla. 223, 19 So.2d 788.)
Next mentioned was In re Adoption of Long, Fla. 1952, 56 So.2d 450, 452, the facts being that the court by interlocutory decree had placed the child of an unwed mother in petitioners' custody pending final hearing; at such hearing, however, the trial judge concluded that the petition should be dismissed because the mother had executed her consent to adoption before the baby was born and had used a fictitious name when doing so. The sole question for determination on appeal was the validity of the consent, and in resolving such question the court refused to agree that under the statute the consent was premature, stating that such a construction emphasized too much the form and too little the purpose, that "[t]he matter of consent has mainly, if not absolutely, to do with the parent's right to the joys and blessings of parenthood, as distinguished from the child's right to proper rearing," although it was observed that the mother had asserted no claim indicating her dissatisfaction with or repudiation of the arrangement. Nor did the use of an assumed name give the court concern, the mother being thoroughly identified and therefore bound.
From a further research on the point, including the decisions since the annotation in Gort, supra, no other cases examined seem applicable, except Barwin v. Reidy, 1957, 62 N.M. 183, 307 P.2d 175, 180, wherein it appeared three infant girls had been ordered restored to the custody of their natural parents, in opposition to a petition for adoption. The parents had therefore apparently concluded for economic reasons that some disposition must be made of the children, and executed their consents for adoption. The spaces on the consent forms for insertion of the names of the proposed adoptive parents were left blank at the time of execution; the names and identity of the proposed adoptive parents were not made known to the parents. Thereafter, they obtained the services of an attorney to resist the petitions for adoption that had been filed. One of the questions considered upon review was the validity of the consents to adoption. The controlling statute, 1953 Comp. § 22-2-5, provided that "written consent to *314 the proposed adoption, duly acknowledged before a notary public, must be filed in the proceedings before any decree of adoption may be granted." In arriving at a construction of the statute, and reversing the trial court, the court said:
"Since adoption may be refused to petitioners who have the strongest endorsement of the parents, we think it follows that the office of the requirement of consent for adoption is to indicate the willingness of the parents that the natural relationship be swept away and a new one created in its stead. The giving of consent is indicative of the subjective state of mind of the parents  expressive only of the individuals and binding no one unless the court shall choose to act thereon. It is up to the court to perform the objective acts of severing the natural relationship and creating an artificial status by judicial determination. As it may or may not decree adoption in favor of persons recommended by the natural parents, it seems most unlikely the legislature intended to impose as a condition to the exercise of the court's jurisdiction knowledge of the identity of petitioners in adoption on the part of the natural parents, because even when that circumstance exists, and possibly the further circumstance that the natural parents have investigated the qualifications of the petitioners and given them their unqualified approval, the court may still refuse to decree adoption, the selection of a foster parent being a judicial act and the responsibility being that of the court. * * *
"We are of opinion the statutory requirements have been met and the lower court was vested with jurisdiction unless the execution of the consents in such manner violated the public policy of this state, as declared by the lower court.
"The natural parents seemed to have abandoned any reliance they may have placed upon this ruling for no argument is set forth supporting it in their brief and they comment that whether blanket consents should or should not be allowed is a question for the legislature. We have considered the matter, however, for if public policy has been violated it should be so declared and the ruling of the trial judge should be affirmed.
* * * * * *
"Moreover, our caution is the more to be exercised because it is a matter of common knowledge that numerous decrees of adoption have been rendered where the person whose consent was required remained unaware of the identity of the adoptive parents either by choice or in compliance with the wishes of petitioners for adoption, viewing that course to be in the best interests of the future well-being of the child. The trial court refused a finding to this effect, but such refusal was erroneous. To declare void consents to adoption so executed would render many children in this state insecure in their relationship with their adoptive parents, as the proceedings could be attacked even after a lapse of many years. Not to be overlooked, too, is the uncertainty which would be cast upon the law of estates.
* * * * * *
"We are told that the weight of authority is that blanket consents are void, either by statute, or as violative of public policy, and are referred to an annotation covering the subject in 24 A.L.R.2d at page 1129, where we find analysis of cases from Pennsylvania and North Carolina. In addition, counsel for the natural parents cite to the same effect Sears v. Davis, Tex.Civ. App., 19 S.W.2d 159. [1929].
"After examining the cases, we do not think the weight of authority, if *315 such it is, is so formidable as to preclude an independent determination and conclusion to the contrary by this court. Of interest in this connection are the cases: Rhodes v. Shirley, 234 Ind. 587, 129 N.E.2d 60 [1955]; Lee v. Thomas, 297 Ky. 858, 181 S.W.2d 457 [1944]; and Adoption of Capparelli, 180 Or. 41, 175 P.2d 153 [1946]."
Sears v. Davis, in the quotation just above, involved a statute which provided "[t]he parent or parents, of a child who is to be so adopted may, by an instrument in writing duly signed, and authenticated or acknowledged as deeds are required to be, transfer their parental authority and custody over such child to the adoptive parent," Rev.St. 1925, art. 44, and the court held that the agreement under consideration did not purport to be a transfer to any one, but rather was in the terms of a power of attorney.
We find no reversible error in the action of the lower court in finding, as it apparently did by discharging the writ, that F.S. § 72.14, F.S.A., did not require that the names of the adopting parents must have been present in the consent for adoption at the time of the execution of the consent. Whether as a matter of public policy, to prevent possible misuse of such consents, as against anonymity which may be desirable, the statute should be amended to require that the consent must be given with reference to the specific proceeding is a proper matter for consideration by the legislature.
Petitioner further contends that even assuming that the consent for adoption in blank is valid, the evidence shows that the consent fails to meet the statutory requirements in that she signed the consent in the presence of but one witness; and that the notary public only asked her if she were over twenty-one, when at the least the person whose acknowledgment is taken must state that the writing is her act and deed. Treating the latter of these positions first, petitioner's argument (1 Fla.Jur. Acknowledgments § 11) must fail in the light of In re Stonehouse, 155 Fla. 223, 19 So.2d 788, in which it was decided that a consent simply sworn to by the mother before a notary was sufficient, the statute not prescribing any particular form of acknowledgment.
An inspection of the testimony reveals that at the time the consent was signed, only one witness was present. The statute, § 72.14, requires that it be executed in the presence of two witnesses. Petition of Gaban, supra. Compare Pugh v. Barwick, Fla. 1952, 56 So.2d 124. There the appellate court, under the facts, limited its decision by holding that a letter of consent might be in the "particular instance" sufficient. The consent for adoption in the cause under consideration was not executed in accordance with the statute and for this reason is invalid.
Although a reversal must be entered herein, a remand for further proceedings is indicated. Nowhere in the record before us does it appear that there was an inquiry into the child's welfare.
"Where a writ of habeas corpus is prosecuted for the purpose of determining the right to the custody of a child, the controversy does not involve the question of personal freedom, because an infant, for humane and obvious reasons, is presumed to be in the custody of someone until it has obtained its majority. The court, in passing on the writ in a case involving the custody of a child, deals with a matter of an equitable nature; it is not bound by any mere legal right of parent or guardian, but is to give either parent's claim to the custody of the child due weight as a claim founded on human nature and generally equitable and just. Therefore, these cases are decided not on the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but on the court's view of the best interests of those whose welfare required *316 that they be in custody of one person or another. Hence, a court is not bound to deliver the child to any claimant, but should leave it in such custody as the welfare of the child at the time appears to require. In short, although the natural rights of the parents are entitled to due consideration, the child's welfare is the supreme consideration, irrespective of the rights and wrongs of its contending parents."
15 Fla.Jur. Habeas Corpus § 62. Reference is also made to Fielding v. Highsmith, 152 Fla. 837, 13 So.2d 208, where upon habeas corpus an order of adoption was found invalid, and to Arnd't v. Prose, Fla. 1957, 94 So.2d 818, where evidence was refused by trial judge on the question of the welfare of the child.
The order of the lower court is reversed and the cause remanded for further proceedings according to the requirements of law.
ALLEN, C.J., and KANNER, J., concur.