778 N.E.2d 417 (2002)
In re the ADOPTION OF the INFANT CHILD BAXTER.
Joseph and Jana Robbins, Appellants-Petitioners,
v.
Stephanie Baxter and Decoby Askew, Appellees-Respondents.
No. 29A02-0202-CV-107.
Court of Appeals of Indiana.
November 13, 2002.
*418 Charles P. Rice, Boveri Murphy Rice Ryan & LaDue, LLP, South Bend, IN, Attorney for Appellants.
Yvonne F. Watkins, Ferguson Watkins & Associates, Indianapolis, IN, Attorney for Appellees.

OPINION
MATTINGLY-MAY, Judge.
Joseph Kenneth Robbins and Jana Robbins appeal the trial court's ruling in favor of Stephanie Baxter and Decoby Askew ("the biological parents"), who sought to revoke their consents to adoption. The Robbinses raise a single issue for our review: whether the trial court erred in its determination that the consents to adoption executed by the biological parents were invalid because those consents were not executed in the presence of a notary public.
We affirm.

FACTS AND PROCEDURAL HISTORY[1]
Stephanie Baxter became pregnant when she was seventeen years old. Her *419 boyfriend, Decoby Askew, is the biological father of the baby. Stephanie's[2] father is Hosea Baxter. Stephanie's mother, Karen Baxter, worked with Jana Robbins. The Robbinses had not been able to conceive a child. At some point in the spring of 2000, Jana and Karen began to discuss whether the Robbinses might adopt Stephanie's unborn child. At first, Stephanie declined this suggestion, but she eventually agreed to the Robbinses' plan to adopt her child.[3]
The Robbinses hired an attorney to assist them in the adoption. Their attorney drafted a petition for adoption along with consents to adoption and waivers of notice ("the consents"). The petition and consents were given to Stephanie, Decoby, Karen and Hosea before the child was born for their review and comment. After the biological parents and maternal grandparents reviewed these documents, they advised the Robbinses that the documents contained misspellings of names that needed to be corrected. The Robbinses had the misspellings corrected and were invited to dinner at the home of the maternal grandparents so that the consents could be signed and the adoption could proceed.
The biological parents and the maternal grandparents signed the consents on or about July 24, 2000 at the maternal grandparents' home. Joseph then took the consents to the Hamilton County Sheriff's Department, where he was employed, and had the documents notarized by Kathy J. Gordon. Gordon was not present at the signing of the consents. She did not know Stephanie, Decoby, Karen, or Hosea, nor did she speak to any of them before she notarized the documents.[4]
The Robbinses' attorney filed a petition for adoption on August 10, 2000. On August 15, 2000, the Hamilton Superior Court appointed the Robbinses the guardian of the unborn child. On September 7, 2000, Stephanie gave birth to a girl. Soon afterwards, Stephanie and Decoby changed their minds about placing the child for adoption. The Robbinses took the child home from the hospital on September 10, 2000. Stephanie and Karen contacted the Robbinses on several occasions *420 in the weeks following the child's birth in an attempt to revoke their consent to the adoption and reclaim custody of the child. These informal efforts failed. The biological parents sought provisional visitation with the child pending our review, and their motion was granted.
On October 17, 2000, the biological parents, the maternal grandparents, and Decoby's parents filed a "Combined Emergency Motion to Set Aside Guardianship and Custody Order Pending Adoption, Petition for Revocation of Consent to Adopt, Petition for Habeas Corpus, Petition to Dismiss Adoption Petition, and Motion to Transfer." (Appellee's App. at 1.) The motion alleges "the pre-birth consents are voidable pursuant to Indiana law." Id. at 2.
The trial court held evidentiary proceedings on October 27, 2000, November 1, 2000, and June 29, 2001 on the issues raised by the petitions and motions filed by the biological parents. On July 31, 2001, it entered an order finding that the signatures of the biological parents and the maternal grandparents were not executed in the presence of a notary public, as required by statute. The trial court found there were no grounds to support proceeding with the adoption without the consents of the biological parents. Because its ruling involved the interpretation of a statute, the trial court stated it would certify its ruling as an interlocutory order for appeal. We accepted the interlocutory appeal on March 11, 2002.

DISCUSSION AND DECISION

Standard of Review
When deciding questions of statutory interpretation, we need not defer to a trial court's interpretation of a statute's meaning. Elmer Buchta Trucking, Inc. v. Stanley, 744 N.E.2d 939, 942 (Ind.2001). Rather, we independently review the statute's meaning and apply that meaning to the facts of the case under review. Id. If a statute is unambiguous, it is not susceptible to interpretation; rather, we must give the statute its clear and plain meaning. In re Grissom, 587 N.E.2d 114, 116 (Ind. 1992).

Validity of Consents
The relevant Indiana statute, § 31-19-9-2 provides:[5]
The consent to adoption may be executed at any time after the birth of the child either in the presence of:
(1) the court;
(2) a notary public or other person authorized to take acknowledgements; or
(3) an authorized agent of:
(A) the division of family and children;
(B) a county office of family and children; or
(C) a licensed child placing agency.
The biological parents and maternal grandparents did not sign the documents in the presence of a notary public.[6] The *421 trial court found the consents were therefore "of no force and effect in this cause." (App. of Appellants Petitioners at 16.) The Robbinses argue that failure to have the consents properly notarized makes them voidable rather than void. They contend that the trial court's finding that the consents were signed knowingly and voluntarily should satisfy the legislative criteria that the consents be made in writing and be given knowingly and voluntarily.
We analyzed the adoption consent statute in Adoption of H.M.G.[7] In that case, we recognized the statutory requirement that consent be given after a child's birth and discussed the effect of a purported consent that did not comply with that requirement:
Ind.Code § 31-3-1-6(b) unambiguously provides `[a] consent to adoption may be executed at any time after the birth of the child [in the presence of named parties].' The use of the word `may' does not refer to whether or not a parent executes a consent. In the first instance, a written consent must be executed before an adoption can be legal. The word `may' refers to when the consent is to be executed, i.e. before or after the child is born. The timing of the execution of the consent is clearly circumscribed by the phrase "any time after the birth of the child." There is no doubt the statute contemplates execution of the consent after the birth of the child; any other interpretation renders the clearly qualifying phrase meaningless. Under the statute, if consent is given it must be given after the birth of the child to insure such consent is a fully deliberative act on the part of the biological parent[.]
606 N.E.2d 874, 875 (Ind.Ct.App.1993).
We determined that while the statute requires consent be given after the child's birth, a pre-birth consent was not void, but voidable and could therefore be ratified after the child's birth:
[t]he intent of the statute, which is designed to provide an equitable adoption procedure by protecting the rights of the adoptive parents and the child as well as those of the biological parents, is best served by finding the consent voidable. A voidable consent is ratified by subsequent action. In the case of a pre-birth consent, such consent is ratified by a post-birth act which sufficiently manifests a present intention to give the child up for adoption.
Id.
Like the H.M.G. panel, we are obliged to determine the effect of a failure to satisfy a requirement of section 31-19-9-2 that of execution of the consent before a notary, the court, or an authorized agent of the division of family and children, a county office of family and children, or a licensed child placing agency. We do not believe our conclusion in H.M.G. as to the timing[8] of an adoption consent requires the same result with regard to the statutorily-required procedure, *422 and we therefore conclude that a consent that is not properly executed before a notary, unlike a consent given before the birth of a child, is void and not merely voidable.
We noted in Johnson v. Cupp, 149 Ind.App. 611, 615, 274 N.E.2d 411, 413 (1971) that the Indiana adoption statute is in derogation of the common law and must be strictly followed in all essential particulars if the natural parents' right of custody of their children is to be defeated. Persons seeking to adopt a minor child have the burden of proving strict compliance with all particular essentials of the adoption statute. Id.
In addressing a similar acknowledgement requirement in its state's adoption consent statute, the Illinois Appellate Court noted its legislature's intent that "the requirement be for the purpose of emphasizing the solemnity of the step being taken and also for the general purpose of providing protection for the parties to an adoption." In re Jennings, 32 Ill. App.3d 857, 336 N.E.2d 786, 790 (1975), aff'd, 68 Ill.2d 125, 11 Ill.Dec. 256, 368 N.E.2d 864 (1977). It accordingly held that the consent in the case before it, which consent had not been acknowledged in accordance with the statutory requirements, was void.
A Texas appellate court applied similar reasoning in considering the same issue in Wilde v. Buchanan, 303 S.W.2d 518, 520 (Tex.Civ.App.-Austin 1957), writ ref. n.r.e. 157 Tex. 606, 305 S.W.2d 778 (1957):
The written consent of a parent, when required, is jurisdictional. This being true and the matter being of such a solemn, serious and permanent nature we believe that the statutory requirements regarding the consent of a mother to the adoption of her child should be complied with substantially, which, in our opinion, is not here shown. The requirement of the statute that a parent's consent be acknowledged must, if it be given any effect, be held to affect the validity of the consent, for the purpose of the acknowledgment is not the usual one of entitling an instrument to record in order to give notice. These matters are completely foreign to the subject matter of this statute. We believe such requirement to be within the general rule that where the statute so provides, acknowledgment or other proof may be essential to the validity of an instrument even as between the parties where such instrument falls within its provisions. As we construe [the adoption consent statute], a parent's consent is insufficient unless duly acknowledged and being insufficient the Trial Court did not err in refusing appellant's petition for adoption.
(Citations and internal quotations omitted.)
While we acknowledge the contrary holdings from Kansas, see Adoption of Trent, 229 Kan. 224, 624 P.2d 433 (1981), and California, see Adoption of Barnett, 54 Cal.2d 370, 6 Cal.Rptr. 562, 354 P.2d 18 (1960), the appellants offer us, we find the reasoning from Jennings and Wilde persuasive and consistent with our determination in Johnson v. Cupp that strict compliance with all particular essentials of the adoption statute is required.
The Indiana consent statute must be strictly followed in all essential particulars if the natural parents' right to custody of their children is to be defeated. We therefore hold that a consent that is not properly acknowledged is void, and accordingly affirm the trial court's ruling.
RILEY, J., and ROBB, J., concur.
NOTES
[1] The Robbinses moved to strike the biological parents' Statement of the Facts for non-compliance with our rules requiring that the facts be supported by page references to the Appendix or Transcript. The Robbinses are correct that the biological parents' Statement of the Facts includes a number of unsupported factual assertions and is therefore not in compliance with our rules. However, because our decision is premised on the interpretation of the consent statute, the biological parents' violation has not substantially impeded our review. We deny the motion to strike the Appellees' Statement of the Facts.

The Robbinses also moved to strike certain parts of the Appellees' Appendix because those materials were not part of the trial court's record at the time it entered its interlocutory order. We grant that motion to strike.
[2] Because many parties involved in this case share common surnames, we will refer to these persons by their first names when necessary to avoid confusion. Jana and Joseph Robbins will be referred to as "the Robbinses." Stephanie Baxter and Decoby Askew will be referred to as "the biological parents." Karen Baxter and Hosea Baxter will be referred to as "the maternal grandparents."
[3] The trial court found that Stephanie's mother "sought out" the Robbinses. It also found that Stephanie's parents knew the Robbinses wanted to adopt a child but the Robbinses were "fearful of adoption proceedings" because they knew other prospective adoptive parents who had bonded with a child but had been unable to finalize the adoption. (App. of Appellants-Petitioners at 13.)
[4] We note that Gordon's acts are cause for revocation of her appointment as a notary public. Ind.Code § 33-16-2-2(a)(6) provides in part that a notary shall not "acknowledge the execution of ... an instrument, unless the person who executed the instrument: (i) signs the instrument before the notary; or (ii) affirms to the notary that the signature on the instrument is the person's own." We are particularly concerned to the extent the record suggests Gordon performed notary services for a law enforcement agency.
[5] As will be discussed below, there is no Indiana statute that specifically addresses pre-birth consents to adoption.
[6] Ind.Code § 33-16-2-2 provides, in relevant part:

A notary public shall not do any of the following:
* * *
Acknowledge the execution of:
* * *
an instrument, unless the person who executed the instrument:
(i) signs the instrument before the notary; or
(ii) affirms to the notary that the signature on the instrument is the person's own.
[7] The section addressed in H.M.G., Ind.Code § 31-3-1-6, was later recodified as Ind.Code § 31-19-9-2.
[8] The birth mother in H.M.G. did not argue that the consent was procedurally flawed. Presumably, a pre-birth consent that is in compliance with all statutory requirements as to its execution and that is ratified after the birth could not, at least in some situations, be meaningfully distinguished from a post-birth consent. We note that even if the consent in the case before us were considered voidable and not void, the record does not reflect subsequent conduct that would demonstrate a ratification of the consent.