**In the Matter of the Adoption of Infant HEWITT.**

**No. 2–977A361.**

Court of Appeals of Indiana,
Second District.

Nov. 27, 1979.

John M. Ross, Rees, Ross & Boese, Indianapolis, for appellant.

Frank W. Hogan, Willsey, Willsey & Hogan, Indianapolis, John P. Price, Bingham, Summers, Welsh & Spilman, Daniel R. Fagan, Indianapolis, for appellee.

SHIELDS, Judge.

Natural Mother executed a consent for adoption on October 31, 1975, two days after the birth of Child and the day she was released from the hospital. Adopting Parents, on that same day, filed their Petition for Adoption and, pursuant to a petition, received the temporary custody of Child. November 10, 1975 Natural Mother filed a petition to withdraw consent claiming, in essence, a change in circumstances and, as the natural mother, a better ability to raise the child. The trial court denied the petition after hearing and granted the Petition for Adoption filed by Adopting Parents.

Natural Mother appeals, asserting as error:

1. Indiana's consent statute violates the Fourteenth Amendment of the United States Constitution.

2. Insufficient evidence to establish a knowing and voluntary consent to adoption by the Natural Mother.

3. Insufficient evidence to establish it was in the best interest of the child to deny the petition to withdraw consent.

We affirm.

### I.

Natural Mother contends the Indiana adoption statute is constitutionally infirm in merely requiring the consent of a natural parent. She argues the statute must further require a determination of voluntariness without which there is interference with her fundamental right as a parent. It is her position the determination of voluntariness must be met by either requiring the natural parent have appointed legal counsel at the time the consent is executed or a hearing "at which proper safeguards would be afforded." Natural Mother does not describe this hearing; we assume she seeks the execution of the consent in open court following a judicial "advice of rights."

Natural Mother gives us no authority, nor has our research found any support for her argument requiring *Miranda*[1] type warnings before a valid consent to adoption can be given.

■ We recognize the right to raise one's children is deemed "essential," "basic," and "far more precious than property rights," and within the protection of the Fourteenth Amendment. *Stanley v. Illinois,* (1972) 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551.

It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Prince v. Massachusetts,* (1944) 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645.

■ Those cases which commonly invoke the protection of the Fourteenth Amendment involve action by the State to terminate parental rights or the State's refusal to recognize the existence of a parental right (*e. g.,* putative father) or the State's declaration of forfeiture of parental right (*e. g.,* failure to support, desertion). The common denominator is State interference with the parental relationship. The specific provision of the adoption law which is attacked by Natural Mother does not fall within that category. Rather, it extends to a natural parent a right not otherwise available, the right to lawfully "abandon" a child. Indeed, the conduct permitted by the consent statute could be criminal without the statutory authority. While we do not necessarily consider a consent to adoption as a contract, nevertheless, the consent provision can be compared to the statute empowering married women freedom to separately contract. Merely because the two statutes exist does not require the exercise of the rights. The statutes are permissive and not coercive. We do not find sufficient state action, in providing the right, to require any protection of the decision to exercise that right other than requiring it to be exercised free from fraud, duress, or similar consent-vitiating conduct. In fact, our statute has afforded additional protection to exercising the right by allowing consent, even though voluntarily executed, to be withdrawn prior to final decree of adoption if withdrawal is in the best interest of the child.[2] Just as a binding, enforceable contract may be executed without the protection of advice of counsel or a judicial hearing, so also may a valid consent be executed.

Undoubtedly, coercive circumstances frequently surround natural parent(s)' execution of consent to adoption. However, the coercion is not the result of state action. Indeed, the state provides ameliorating conditions by providing procedures for establishing paternity, granting financial aid to dependent children, and legalizing abortion.

---

1. *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

2. IC 31–3–1–6(f) [Burns Code Ed. 1978 Supp.]. This section was amended effective October 1, 1979 by Acts 1978, P.L. 136, § 28.

The opportunity to consent to adoption can indeed be ameliorative to a natural parent with the best interest of the child foremost in mind.

We therefore hold that the advice and consultation of an attorney is not a condition precedent to the execution of a valid consent to adoption.

Furthermore, Natural Mother was perfectly free to seek the advice and counsel of an attorney at any time, including the exact moment she executed the waiver. The record is totally devoid of any evidence or claim that she suffered any interference with the exercise of this right or, indeed, that she made any effort to secure such advice and counsel.

We also find no merit in Natural Mother's argument that some type of advice hearing is necessary in order to guarantee a knowing and voluntary consent.

Nor does the Natural Mother show how she would be in a superior position to question the voluntariness of her consent at the proceeding from which she now appeals had she had a judicial advice hearing.

We hold the statutory provision for consent, as expanded by case law recognizing the right to invalidate a consent obtained by fraud, duress, or similar overreaching practices, is constitutionally adequate.

## II.

Natural Mother claims the evidence is insufficient to establish her knowing and voluntary consent to the adoption of Child.

■ Our Supreme Court, albeit in *dicta*, has acknowledged that consent to adoption must be the voluntary or intentional act of the natural parent(s). Voluntary, in the sense of executing a consent, implies an act of one's own volition, free from duress, fraud, or other consent-vitiating factors, and with knowledge of essential facts. *Em-*

*mons v. Dinelli,* (1955) 235 Ind. 249, 133 N.E.2d 56; *Rhodes v. Shirley,* (1955) 234 Ind. 587, 129 N.E.2d 60.

■ Voluntariness is distinguishable from the issue of withdrawal of consent. If a consent is given involuntarily, the issue is not one of withdrawal of the consent but rather the validity of the consent itself. Consent does not exist where obtained through fraud, duress, or other consent vitiating factors and an adoption obtained with an invalid consent would be subject to attack as any other judgment obtained by fraud, duress, or other such practices. *Rhodes v. Shirley, supra.* See, e. g., Indiana Rules of Procedure, Trial Rule 60(B).

■ The issue of an invalid consent may be raised in the adoption hearing by the intervention of the natural parent, as in *Rhodes v. Shirley, supra,* or it may be raised, as here, by a petition to withdraw consent. Whatever procedure is used, the burden of proof falls upon the intervenor or the petitioner because it is in the nature of an affirmative defense to a facially valid consent.[3] *Rhodes v. Shirley, supra.*

■ Natural Mother appeals from a negative judgment which is a judgment on a claim rendered against a party with the burden of proving the claim. This court has repeatedly warned that an allegation of insufficient evidence fails to present an appealable issue in an appeal from a negative judgment. The proper challenge is the judgment is contrary to law. *Smith v. State,* (1976) Ind.App., 353 N.E.2d 470; *Mandle v. Owens,* (1975) 164 Ind.App. 607, 330 N.E.2d 362. Properly, this specification of error is waived. However, due to the sensitive nature of this case, we choose to address the merits of Natural Mother's argument.[4]

■ Had the issue been properly preserved, Natural Mother would have had to

---

**3.** Natural Mother's petition to withdraw consent did not seek relief on the basis of a nonvoluntary consent. However, the transcript of the evidence presented at the hearing on the petition to withdraw consent indicates the issue was presented to the trial court.

**4.** We stress our consideration of the merits is indeed exceptional. Appellate counsel must not rely on this treatment as precedent.

establish the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Gemmer v. Anthony Wayne Bank,* (1979) Ind.App., 391 N.E.2d 1185.

Natural Mother, in support of her claim of the involuntariness of her consent, emphasizes the following: the consent was executed two days after the birth of Child; during her pregnancy she was abandoned and ostracized by her family for whom she was a source of embarrassment and shame; she was eighteen at the time of the consent; she did not consult with her own attorney; and her obstetrician had erroneously advised her:

> . . . it was my understanding that she had up to six months following delivery to change her mind at that point, but that was a point that she should talk to an attorney about.

■ Signing of consent in the hospital soon after birth are attendant circumstances not unusual in the signing of a consent to adopt and, standing alone, are insufficient to void a consent. Similarly, tension and pressure caused by parental disapproval, even abandonment, are not uncommon and undoubtedly caused Natural Mother much stress. However, emotion, tensions, and pressure are also insufficient to void a consent unless they rise to the level of overcoming one's volition. Natural Mother, at eighteen, was legally an adult and a high school graduate who maintained a "B" average. No one discouraged or interfered with her seeking legal advice or any other advice she might desire. She remembered her obstetrician's statement about consent, but did not rely on it.

■ Significantly, at trial the Natural Mother did not claim she was ignorant of the import and/or legal consequences of her execution of the consent. Rather, she admitted she was twice advised by counsel for Adopting Parents as to the effect of the consent and the rights relinquished by it and that she freely and voluntarily executed the consent. Indeed, her decision to withdraw her consent was "heavily influenced by what (her) family is saying," and "based heavily on family influence" accompanied by a "dramatic change in the attitude of (her family)."

Thus, there is no evidence Natural Mother's consent was executed under duress, fraud, or other consent-vitiating factors. To the contrary, considering voluntariness as a question of fact to be determined from all the circumstances, the evidence is her consent was voluntary, *i. e.,* it was volitional and with knowledge of essential facts. Thus, Natural Mother failed in her burden to establish the evidence at trial led to but one conclusion and the court reached the opposite conclusion.

### III.

Finally, Natural Mother claims the evidence does not support the trial court's determination that she was not acting in the best interest of her child in seeking to withdraw her consent. This issue, too, is waived by her claim of insufficient evidence, but, for the reasons previously stated, we treat the issue on its merits. Prior to the decree a consent may be withdrawn if the court finds the person seeking the withdrawal is acting in the best interest of the person sought to be adopted and orders the consent withdrawn. IC 31–3–1–6(f) (Burns Code Ed., 1977 Supp.).

■ The trial judge must recognize there are three parties whose interests and feelings are involved in the adoption process and all must be treated fairly. That judge must balance the interest of the natural parents and their sacred relationship to their child against the hope, expectation, reliances, and desires of the adoptive parents—all against the best interest of the child which, after all, rules supreme.

■ The trial court had evidence before it as to the present circumstance of the Natural Mother and the Adoptive Parents. The trial judge also had the opportunity to observe and judge the credibility, demeanor, and maturity of these respective parties. Upon his shoulders fell the awesome responsibility of determining what was, in fact, in the best interest of the child. We

do not disturb the judgment of the trial judge unless the evidence at trial led to but one conclusion and the trial court reached the opposite conclusion. This situation does not exist in this record.

Judgment affirmed.

BUCHANAN, C. J., and SULLIVAN, J., concur.