In the Matter of the ADOPTION OF Rita Lee HERMAN.

William O'Dell HERMAN, Appellant (Respondent Below),

v.

Jerry L. ARNOLD, Appellee (Petitioner Below).

No. 3–479A93.

Court of Appeals of Indiana, Third District.

June 19, 1980.

Rehearing Denied July 25, 1980.

J. Moritz Grolimund, Elkhart, for appellant.

Anthony J. Terlep, Jr., Elkhart, for appellee.

HOFFMAN, Judge.

Jerry L. Arnold obtained judgment of adoption of his wife's minor child, over protest of appellant William O'Dell Herman, the child's natural father. The court found that Herman's consent to the adoption was not required because he had failed to communicate significantly with the child for a period of at least one year and that it was in the best interest of the child to permit the adoption.

Herman now assails the court's judgment alleging that there was insufficient evidence to establish (1) that he had failed without justifiable cause to communicate significantly with the child when able to do so and (2) that adoption was in the child's best interest.

The appropriate scope of review for this Court where an adoption petition has been granted is to consider the evidence most favorable to the petitioner and reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the decision below. This must be done without reweighing conflicting evidence. *Emmons v. Dinelli et al.* (1956), 235 Ind. 249, 133 N.E.2d 56; *Rosell v. Dausman* (1978), Ind.App., 373 N.E.2d 185.

The pertinent evidence in this case is that natural mother and father married in November 1971 and on March 4, 1972 the female child was born. Natural parents separated in October 1973, the child remaining with her mother. During this separation Herman only visited the child on Christmas Day 1973 and on her second birthday in March of 1974. An attempt to visit the child one evening in June 1974 failed because it was past her bedtime. The marriage between natural parents was dissolved on September 13, 1974 and mother was named as custodial parent.

In October 1974 natural mother married Jerry Arnold. From that time on mother and Arnold have solely cared for and supported the child. They have lived in Elkhart, Indiana except from August to October 1977, when Arnold took a leave of absence to try another job opportunity in Marshall, Illinois. Arnold then resumed his previous employment in Elkhart. The minor child is now enrolled in school, uses Arnold as her surname and believes that Jerry is her natural father.

William Herman was charged with two counts of murder on July 7, 1974. He plead guilty to the charges and has been incarcerated from that time, serving a life sentence at the Indiana State Prison in Michigan City since February 25, 1975.

Jerry Arnold first began adoption proceedings while in Illinois. Herman received a copy of this first petition to adopt but made no effort to contact the child. When Arnolds moved back to Elkhart, Indiana they abandoned the Illinois adoption proceedings and pursued an action in Elkhart County. Upon notice of the second adoption petition, Herman filed a petition to enforce visitation rights. The two petitions were consolidated and Herman stated at the hearing that he had attempted to communicate with the child by sending Christmas and birthday cards the previous three years. Arnolds maintained that none of these cards were ever received.

The court below found that, pursuant to statute, Herman's consent to the adoption

was not required. IC 1971, 31–3–1–6(g) (Burns Code Ed.)[1] provides:

"(g) Consent to adoption is not required of:

(1) a parent or parents if the child is adjudged to have been abandoned or deserted for six [6] months or more immediately preceding the date of the filing of the petition; or a parent of a child in the custody of another person, if for a period of at least one [1] year he fails without justifiable cause, to communicate significantly with the child when able to do so or he wilfully fails to provide for the care and support of the child when able to do so as required by law or judicial decree;"

Under this provision one petitioning to adopt absent parental consent has the burden of proving both a lack of communication for the statutory period and that the ability for communication during that time span existed. *In Re Adoption of Anonymous* (1973), 158 Ind.App. 238, 302 N.E.2d 507.

The statute contemplates that a non-custodial parent must maintain *significant* communication with a child to escape dispensing with parental consent.

*See: In re Adoption of Thornton* (1976), Ind.App., 358 N.E.2d 157; *Rosell v. Dausman, supra.*

Although Herman admits in his reply brief that he had failed to maintain significant communication with the child for nine months following separation from natural mother and prior to the time of his arrest, he proposes that his arrest on July 7, 1974 and continuous incarceration serve to toll the one-year requirement of IC 1971, 31–3–1–6(g)(1), *supra*. He further complains that his ability to communicate with the child was impaired because Mr. and Mrs. Arnold moved several times without notifying him.

The statute requires a minimum one-year period of non-communication before parental rights can be terminated, but

not necessarily the year immediately preceding the filing of a petition for adoption. *Rosell v. Dausman, supra*. Thus, in light of the nine-month period of no significant communication admitted to by Herman, the question is whether non-communication during the first three months following his arrest was justified. Imprisonment standing alone does not establish statutory abandonment or desertion so as to allow an adoption to take place without obtaining the consent of an incarcerated parent. *See: Murphy v. Vanderver* (1976), Ind.App., 349 N.E.2d 202. Neither should confinement alone be deemed a justifiable reason for failing to maintain significant communication with one's child. To so hold would be to thwart not only the purpose of IC 1971, 31–3–1–6(g) but also the intent of the entire chapter which authorizes termination of parental rights and subsequent adoption. Concerning IC 1971, 31–3–1–6(g) this Court stated in *Rosell, supra*, at 188 of 373 N.E.2d:

"Rosell fails to acknowledge another reasonable intent of the statute, that of encouraging non-custodial parents to maintain communication with their children. If we were to accept Rosell's interpretation of the statute, it would be tantamount to encouraging non-custodial parents to visit their children just often enough to thwart the adoptive parents' efforts to provide a settled environment for the children."

And the stated purpose of the adoption chapter as a whole is contained in IC 1971, 31–3–1–7, which provides in part:

"When the court terminates parental rights under this chapter [31–3–1–1—31–3–1–12] its paramount concern shall be for the health, welfare and future of the child whose adoption is immediately contemplated or who in the future will hopefully be adopted. The purpose of this chapter in regard to the termination of parental rights is to give to unfortunate children who have been bereft of love and

1. This section was amended effective October 1, 1979. For current law see IC 1971, 31–3–1–6 (1979 Burns Supp.).

parental care the benefits of a home, and of such parental care, and the law should receive a liberal construction to effect this purpose."

 The Texas courts have considered the question of whether involuntary imprisonment by a non-custodial parent would preclude a finding of abandonment under a similar statute extinguishing parental rights. The legal principle which has emerged there is consistent with that reached here: while a parent's incarceration should not operate automatically as an abandonment neither should it foreclose the possibility of such a finding. *Jordan v. Hancock* (1974) Tex.Civ.App., 508 S.W.2d 878. *Also see: H. W. J. v. State Dept. of Public Welfare* (1976) Tex.Civ.App., 543 S.W.2d 9. A pattern of behavior evidencing an intent to abandon (i. e., a disregard for concern, care and filial affection toward a child) prior to an involuntary imprisonment may be deemed to persist while a sentence is being served. Therefore, non-communication continuing during imprisonment may be coupled with a previous term of non-communication to comprise the prerequisite statutory period for termination of the parent-child relationship. Thus, it must be determined whether Herman, though incarcerated, still maintained the ability to communicate with the minor child. The evidence supports a conclusion that he did have the means of communication available. Regular correspondence could have been maintained through letters and phone calls. *See: In re Adoption of Dove* (1977), Ind. App., 368 N.E.2d 6. Herman's argument that he could not do so because the Arnolds moved without advising him is not persuasive. He only complains that he lost track of the child following his ex-wife's remarriage and subsequent change of residence. That event did not occur within the three-month period that we are here concerned with. From the time of his July 7, 1974 arrest until the Arnolds' marriage on October 24, 1974, a period of approximately 3½ months, Herman presumably knew where his ex-wife and the child were residing. Herman also maintained the ability to enforce his visitation rights through the courts. He took no such measure for a period of nearly four years, until he filed the matter consolidated herein. He could have enlisted the help of his parents (paternal grandparents) in establishing and maintaining contact with the child. Paternal grandparents lived in Elkhart County for twenty-seven years and did briefly see the child around town on at least two occasions following their son's divorce. They visited Herman at prison every two weeks and indicated a willingness to assist their son in any attempt he might undertake to communicate with the child. Yet, Herman made no request regarding the child's welfare or visitation during this period.

The court also heard evidence that Herman was in no way prevented by natural mother from visiting or communicating with the child, but rather, that any communication or visit at a reasonable hour was left readily available to Herman by natural mother. This accumulation of evidence amply supports the conclusion that Herman maintained the ability to communicate with the child but failed unjustifiably to do so, a determination which promotes the intent and spirit of the adoption statutes referred to above.

 Herman secondly alleges that there was no showing that the adoption would further the best interest of the child. There is no merit to this contention. The evidence shows that the minor child looks upon Jerry Arnold as her real father. Arnold has solely provided for her support and education, and has provided a stable home environment since October 24, 1974. He has persisted in efforts to legally adopt the child.

The child has no recollection of Herman as she was only two years old at the time of his last visit. Herman has demonstrated a lack of concern for the child, and he remains unable to contribute to her support in the future. There is ample evidence that the best interest of the child would be promoted in the stable family unit furnished by Arnold.

Judgment affirmed.

Affirmed.

STATON, J., concurs.

GARRARD, P. J., concurs with opinion.

GARRARD, Presiding Judge, concurring.

While I concur with the majority result based upon the evidence and reasonable inferences most favorable to the trial court's finding, I am concerned about the implication that the statutory year for failure to meaningfully communicate could be found to have occurred several years before the filing of the petition.

I agree that incarceration is not per se outcome determinative. It may certainly alter the mode or means for significant communication or, in some instances, supply justifiable cause.

I find the principal value of the pre-incarceration evidence as to Herman's communication habits to be that it is circumstantial evidence capable of providing a reasonable inference of his continued state of mind concerning communication with his child. That inference when coupled with the evidence favorable to the judgment of his extremely meager attempt to communicate after he was imprisoned permits the ultimate conclusion that without justifiable cause he failed to communicate significantly throughout the entire period preceding the filing of the adoption petition.