**In the Matter of the ADOPTION OF Carl Glenn MARCUM.**

**Willie MARCUM, Appellant-Respondent,**

**v.**

**Phillip C. COTTER, Appellee-Petitioner.**

**No. 1–1181A339.**

Court of Appeals of Indiana,
First District.

June 3, 1982.

David J. Dreyer, Peter L. Cassady, Legal Services Organization of Indiana, Inc., Indianapolis, for appellant-respondent.

David P. Barrett, Brookville, for appellee-petitioner.

ROBERTSON, Judge.

Willie Marcum, the natural father of Carl Glenn Marcum, appeals the trial court's decision to grant Carl's adoption without his parental consent, thus terminating his parental rights.

Willie essentially argues the evidence was insufficient to support this decision. We affirm.

Carl was born on June 30, 1971, to Willie Marcum and Delcie Marcum. They were divorced on April 21, 1978, and Delcie Marcum received custody of Carl. She subsequently married Phillip C. Cotter and Carl lived with Delcie and Phillip in Brookville, Indiana. Willie lived in Kentucky.

On February 13, 1981, Cotter filed a petition to adopt Carl without Willie's consent

and thus, to terminate Willie's parental rights. The petition was based on Ind.Code 31–3–1–6(g)(1) which provides for adoption without parental consent when:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for six [6] months or more immediately preceding the date of the filing of the petition; *or a parent of a child in the custody of another person, if for a period of at least one year he fails without justifiable cause to communicate significantly with the child when able to do so or knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree (when the parent or parents have made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent or parents.)* (Emphasis added.)

The evidence before the trial court revealed that Willie worked as a coal miner until being laid off in May, 1980. Prior to that date and from the time of his divorce, he was making $8.75 per hour, working somewhat irregularly, but averaging $200.00 per week. For six months after being laid off, Willie received unemployment benefits of $120.00 per week. During this time, Willie was living in Manchester, Kentucky, with his current wife and six children, five by her prior marriage, with another child expected. She was receiving Social Security benefits for her children.

When the Marcums' divorce was finalized, the court entered a support order requiring Willie to pay $15.00 a week to the court clerk for Carl's support. Willie conceded that he had made no payments pursuant to this order in the year prior to the filing of Cotter's adoption petition. His ex-wife, Delcie, testified that all the support Willie paid was prior to her remarriage, while she was receiving welfare benefits, during 1978 and 1979. Checks which Willie presented to document payment for this period show total payments of $135.00.

Willie argued that he made other payments which were not reflected because he did not have the cancelled checks. He also stated that he wrote his son frequently. He claims these checks and letters he wrote to Carl were sent to his daughter, who lives a few blocks from the Cotters and Carl in Brookville, Indiana. However, his wife was unaware of any letters from Willie to Carl in the preceeding year and explained that Carl always mentioned when he received a letter from his father. She also explained that Willie never called or requested to visit Carl, but instead saw him at his daughter's house by chance.

Willie primarily relies on four contacts with Carl to show he maintained communication with him and provided support for him. In March, 1980, he purchased $50.00 worth of clothes for Carl, and brought them to him. He also took Carl to dinner. In May, 1980, Carl broke his leg and Willie visited him in the hospital. He also attempted to have his insurance pay Carl's medical expenses. It is unclear whether the expenses were actually paid. In October, 1980, Willie sent Carl clothes. Delcie explained the clothes Willie sent were the wrong size and not useful. Finally, Willie visited with Carl at Christmas, 1980, on December 24.

Willie also visited with Carl in June, 1981, when the Cotters and Carl went to Kentucky. This visit occurred when Carl went to visit his brother, who lived next door to Willie.

There was also evidence that Willie was intoxicated during some of his visits with Carl.

On appeal, we will not disturb the trial judge's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Matter of Adoption of Hewitt*, (1979) Ind.App., 396 N.E.2d 938. We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Matter of Adoption of Herman*, (1980) Ind.App., 406 N.E.2d 277. We note that a petitioner for adoption without parental consent bears the burden of proving the statutory criteria in IC 31–3–1–6(g)(1)

by clear and indubitable evidence. *Matter of Leckrone,* (1980) Ind.App., 413 N.E.2d 977. *In re Bryant's Adoption,* (1963) 134 Ind.App. 480, 189 N.E.2d 593. *See, Ellis v. Knox County Depart. of Pub. Welfare,* (1982) Ind.App., 433 N.E.2d 847.

In light of these standards, we think the evidence was sufficient to support the trial court's decision. Willie had not complied with the divorce court's support order for over one year. This was true even prior to May, 1980, when he was laid off from work, so there is no question of whether he was unable to meet his obligations. *Matter of Adoption of Herman,* (1980) Ind.App., 406 N.E.2d, 277.

The "failure to provide support" provision of IC 31–3–1–6(g)(1) is an alternative provision. Adoption without parental consent is also appropriate when no significant communication with the child occurs for over one year, without justifiable cause. The evidence reveals little communication with some of it marred by Willie's drinking. Willie did not know Carl's address or phone number nor did he attempt to discover them. His visits with Carl were often chance encounters.

The statute specifically addresses a situation such as this.

[W]hen the parent or parents have made only *token efforts to support or to communicate with the child,* the court may declare the child abandoned by the parent or parents; (Emphasis added.)

Therefore, the trial court's decision is affirmed.

Judgment affirmed.

RATLIFF, P. J., and NEAL, J., concur.