**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
May 09 2014, 10:26 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**SHAWN P. DEVINE**
Michigan City, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE ADOPTION OF M.D.: | ) | |
| | ) | |
| S.D. (Father), | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1309-JP-363 |
| | ) | |
| S.F. (Mother), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| D.M. (Adoptive Parent), | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

APPEAL FROM THE SAINT JOSEPH PROBATE COURT
The Honorable James N. Fox, Judge
The Honorable Barbara J. Johnston, Magistrate
Cause No. 71J01-1211-AD-105

**May 9, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

D.M. sought to adopt his stepdaughter, M.D., without the consent of the child's biological father, who is serving a thirty-one-year sentence in prison. The trial court agreed with D.M. and Mother that Father's consent was not required and approved the petition for adoption. Father, pro se, contends as the sole issue on appeal that the trial court erred in granting D.M.'s petition to adopt without Father's consent.

We affirm.

The facts favorable to the ruling are that M.D. was born January 5, 2006 to Mother and Father, who were never married and were no longer together by the time of the child's birth. Father was present for the birth and signed the birth certificate. During M.D.'s infancy, Father visited sporadically and provided some support. In August 2007, Mother (via the State) filed a petition to establish court-ordered child support. In December 2007, the trial court ordered Father to pay child support in the amount of $40.00 per week through the clerk's office. Father failed to make any payments until May 2008, resulting in an arrearage of over $2000.00. Thereafter, Father made payments through June 2009, totaling approximately $2400, but payments stopped at that point.

In early 2009, Father began exercising parenting time with M.D. about every other weekend and some weekdays. M.D. also spent significant time with Father's family and his older son. By all accounts, Father and M.D. developed a good relationship.

Father has a history of alcohol and drug abuse. He has never had a license and has had a number of arrests and convictions for operating while intoxicated (OWI). In January 2010, Father was on probation out of Michigan for a drug offense. He had parenting time

2

with M.D. on the weekend of January 9, 2010, but chose to leave M.D. with his sister while he used alcohol and drugs (cocaine and opiates). That evening, Father drove while intoxicated and led police on a high-speed chase that ended when Father drove on the wrong side of the road through an intersection and into a police vehicle. The officer died at the scene. Father was arrested and later pleaded guilty to class B felony OWI causing death, class D felony resisting law enforcement, class D felony possession of a controlled substance, and class D felony possession of cocaine. Father also admitted being a habitual substance offender. He was sentenced on May 14, 2010 to an aggregate sentence of thirty-one years in prison.

During 2010 and 2011, Father sent five to six letters each year to M.D. and his then-girlfriend brought M.D. to visit him twice in prison. He made nominal support payments in 2012 (total of $60.00) and 2013 ($40.00). Mother initially allowed visits with Father's family, but she eventually stopped most of those because she felt they were not in M.D.'s best interest.

Mother and M.D. have lived with D.M. since 2009 and he has provided M.D. with love, care, and financial support.[1] Mother graduated from nursing school in May 2011, and she and D.M. became engaged later that year. In the spring of 2012, Mother informed Father that after she and D.M. married, D.M. would seek to adopt M.D. Shortly after this conversation, Father began making nominal support payments. Thereafter, on September 26, 2012, he filed a petition for parenting time and to modify support. Mother and D.M. married

---

[1] Mother and D.M. broke up for a month in 2011, but D.M. continued to help care for M.D. during this time.

on November 21, 2012 and filed a petition for adoption on November 29, 2012. Father contested the adoption petition.

The trial court held an evidentiary hearing on both pending petitions on August 12, 2013. After taking the matter under advisement, the court denied Father's request for parenting time and granted the petition for adoption. The court concluded that Father's consent was not required for the adoption because he was unfit to be a parent and M.D.'s best interest would be served by dispensing with Father's consent.[2] In this regard, the court noted that Father was serving a thirty-one-year sentence. Father now appeals.

On review of a trial court's ruling in an adoption proceeding, we will not disturb the ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of T.L.*, 4 N.E.3d 658 (Ind. 2014). We presume the decision is correct, and we consider the evidence in the light most favorable to the decision without reweighing the evidence. *Id.*; *In re Adoption of H.N.P.G.*, 878 N.E.2d 900 (Ind. Ct. App. 2008), *trans. denied*. Moreover, it is the appellant's burden to overcome the presumption of correctness. *In re Adoption of H.N.P.G.*, 878 N.E.2d 900.

On appeal, Father contends that the trial court's conclusion that Father was unfit was based solely on his lengthy incarceration. He claims this was insufficient to establish that he was unfit to parent M.D.

---

[2] The trial court did not makes specific findings in its order, nor was it required to under Ind. Trial Rule 52(A).

4

The purpose of our adoption statutes is to protect and promote the welfare of children by providing them with stable family units. *In re Adoption of K.F.*, 935 N.E.2d 282 (Ind. Ct. App. 2010), *trans. denied*. The relationship between parent and child is of such fundamental importance that adoption statutes, being in derogation of the common law, are "strictly construed in favor of a worthy parent and the preservation of such relationship." *Id.* at 289. In evaluating the parent-child relationship, however, "the best interest of the child is paramount and our main concern should lie with the effect of the adoption on the reality of the minor child's life." *Id.*

In this vein, Indiana Code Ann. § 31-19-9-8 (West, Westlaw current with all legislation of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through May 1, 2014) provides a number of exceptions to the general rule that the consent of the biological parents is required before a child may be adopted. The exception at issue in this case provides that consent is not required from a parent if: "(A) a petitioner for adoption proved by clear and convincing evidence that the parent is unfit to be a parent; and (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent." I.C. § 31-19-9-8(a)(11). By statute, the petitioner bears the burden of proving a parent's consent is not necessary. I.C. § 31-19-10-1.2(e) (West, Westlaw current with all legislation of the 2nd Reg. Sess. of the 118th General Assembly (2014) with effective dates through May 1, 2014). To meet this burden, the petitioner must demonstrate the element of the statute by clear and convincing evidence. *In re Adoption of M.A.S.*, 815 N.E.2d 216 (Ind. Ct. App. 2004).

I.C. § 31-19-9-8(a)(11) does not provide a definition of "unfit." We have recently construed the term as follows:

> Black's Law Dictionary defines "unfit" as "[u]nsuitable; not adapted or qualified for a particular use or service" or "[m]orally unqualified; incompetent." Black's Law Dictionary 1564 (8th ed. 2004). Father and the Adoptive Parents have both looked to cases where parental rights have been terminated as a result of a petition made by the Department of Child Services ("DCS") for guidance. In termination cases, DCS is required to allege, inter alia, that there is "a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied," that there is "a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child," or that the child "has, on two (2) separate occasions, been adjudicated a child in need of services." Ind. Code § 31–35–2–4(b)(2). Although Indiana Code Section 31–35–2–4 does not use the word "unfit," we have frequently referred to its provisions as indicators of a parent's fitness, and termination cases clearly deal with a parent's suitability or competence to be a parent. *See, e.g., In re A.B.,* 924 N.E.2d 666, 670 (Ind. Ct. App. 2010) ( "In determining whether the conditions that led to a child's removal will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing ..."). The termination statutes and adoption statutes strike a similar balance between the parent's rights and the child's best interests.
>
> Therefore, we agree that termination cases provide useful guidance as to what makes a parent "unfit." In these cases, we have considered factors such as a parent's substance abuse, mental health, willingness to follow recommended treatment, lack of insight, instability in housing and employment, and ability to care for a child's special needs.

*In re Adoption of M.L.*, 973 N.E.2d 1216, 1223 (Ind. Ct. App. 2012). "Unfit" is, therefore, intended to include both practical and moral components.

Father claims that his incarceration cannot be the sole reason for the court's finding that he is unfit. This court has held that "while a parent's incarceration should not operate automatically as an *abandonment* neither should it foreclose the possibility of such a finding." *In re Herman's Adoption*, 406 N.E.2d 277, 280 (Ind. Ct. App. 1980) (emphasis

6

supplied). We have not found a similar case regarding whether incarceration, standing alone, establishes the basis for a finding of parental unfitness under the adoption statutes. Regardless, the trial court had additional circumstances before it to support the finding that Father is an unfit parent.

"It is well-settled that '[i]ndividuals who pursue criminal activity run the risk of being denied the opportunity to develop positive and meaningful relationships with their children.'" *In re Adoption of H.N.P.G.*, 878 N.E.2d at 907 (quoting *Castro v. State Office of Family & Children,* 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*). The record reveals that Father has a significant history of substance abuse and criminal arrests and convictions. Father's illegal and dangerous behavior culminated in him leading police on a high-speed chase, while he was drunk and high, and ultimately crashing into a police vehicle, killing an officer. This all occurred on a weekend that Father had parenting time with M.D.

As a result of his criminal actions, Father was sentenced to thirty-one years in prison. At the time of sentencing, his earliest possible release date would have been around July 2025, when M.D. will be nineteen years old. Even with potential educational credits, M.D. will likely be well into her teens before Father is released. Thus, Father will be unable to provide physical care or financial support for M.D. within a meaningful timeframe.[3]

With respect to emotional support, the record reveals that during the first two and one-half years of his imprisonment, Father had only two visits with M.D. and sent her about a dozen letters. He did not seek to establish parenting time until September 2012, which was

---

[3] In the six months leading up to his arrest, Father did not pay any of his court-ordered child support.

7

shortly after he learned of Mother's intended marriage and the proposed adoption. On the record before us, we cannot agree with Father's assertion that he made every effort to maintain contact with M.D. while he was incarcerated.[4]

Much of Father's argument is a request for us to reweigh the evidence, which we will not do. When viewed in the light most favorable to the judgment, the evidence supports the trial court's finding of unfitness.

Judgment affirmed.

MATHIAS, J., and PYLE, J., concur.

---

[4] While Father's family made some effort to stay in contact with M.D. during Father's incarceration, Father does not explain how this affects the determination regarding his fitness to parent M.D.